# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 16-CV-6685 (JFB) (GRB)

LACROSSE UNLIMITED, INC.,

Plaintiff,

VERSUS

CALIFORNIA LACROSSE, INC.,

Defendant.

**MEMORANDUM AND ORDER**
February 3, 2017

JOSEPH F. BIANCO, District Judge:

Plaintiff Lacrosse Unlimited, Inc. brought an action, setting out claims for, *inter alia*, fraudulent inducement and breach of contract, against defendant California Lacrosse, Inc. in New York state court. Defendant removed the case to this court and now moves, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the Southern District of California.

For the reasons set forth below, the Court grants defendant's motion to transfer venue. Specifically, the Court finds in its discretion that, because defendant filed a lawsuit concerning the same subject matter against plaintiff in the Southern District of California before plaintiff brought this action, the "first-filed rule" warrants transfer of this case. *See Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274–275 (2d Cir. 2008) ("As a general rule, '[w]here there are two competing lawsuits, the first suit should have priority.'" (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (alteration in original))). In particular, defendant's California lawsuit seeks money damages rather than a declaratory judgment, and plaintiff did not directly threaten litigation prior to its filing. Therefore, the "anticipatory lawsuit" exception to the first-filed rule does not apply. *See id.* Moreover, plaintiff has identified no other special circumstances that make New York so convenient as to give the second-filed action priority. *See id.* Accordingly, defendant's motion to transfer the case to the United States District Court for the Southern District of California is granted under Section 1404(a).

I. BACKGROUND

A. Facts

The following facts are taken from plaintiff's Amended Complaint (ECF No. 11 ("Pl.'s Compl.")), defendant's complaint in

the California proceeding (*see* Decl. of Edward J. O'Connor in Support of Def.'s Mot. to Transfer Venue ("O'Connor Decl."), Ex. 5, ECF No. 10-2 ("Def.'s Compl.")), and the parties' submissions in connection with defendant's motion to transfer venue.

On September 1, 2014, the parties entered into an Asset Purchase Agreement ("APA") with plaintiff agreeing to purchase various assets, including eight retail stores, an internet-based lacrosse retail sales business, and plaintiff's operations for retail sales made directly to lacrosse organizations ("Team Sales"), from defendant. (Pl.'s Compl. ¶¶ 13–14; Def.'s Compl. ¶ 5.) Of the eight retail stores, six were located in California, with three of those in San Diego. (*See* Decl. of Steve Sepeta in Support of Def.'s Mot. to Transfer Venue ("Sepeta Decl."), Ex. 1 at 4.) The APA obligated plaintiff to pay defendant (1) an initial amount of $333,553 and (2) a percentage of the gross revenues related to Team Sales over a three-year period after the APA closed, to be made each quarter (the "royalty payments"). (Pl.'s Compl. ¶ 15; Def.'s Compl. ¶ 5.) Plaintiff was also to submit quarterly reports detailing its revenues, complete with copies of general ledger activities, within fifteen days of the end of each quarter (the "Quarterly Reports"). (Def.'s Compl. ¶ 5.) In addition to the assets outlined above, plaintiff also agreed to purchase $800,000 of lacrosse apparel bearing the brand name "Adrenaline" over a three-year period. (Pl.'s Compl. ¶ 18; APA § 2(e)(ii).) Defendant also agreed not to conduct retail sales operations within thirty miles of the stores subject to the APA (the "non-compete provision"). (*See* APA § 9.)

A contractual dispute arose between the parties in the summer of 2015 when defendant allegedly failed to transfer some of the assets. (*See* Decl. of Eric Mueller in Opp'n. to Def.'s Mot. to Transfer Venue, ECF No. 18 ("Mueller Decl."), ¶ 7). In response to this alleged failure, plaintiff stopped making royalty payments. (*Id.* ¶ 9; Def.'s Compl. ¶¶ 7–9.) According to plaintiff, around the time it stopped making payments, its president, Joe DeSimone, "told [defendant] that something needed to be done about [defendant's alleged violations of the agreement,] otherwise we would have to go to court [sic]." (Decl. of Joe DeSimone in Opp'n to Def.'s Mot. to Transfer Venue, ECF No. 19 ("DeSimone Decl."), ¶ 16). The parties then engaged in extensive settlement negotiations to resolve the matter. (Mueller Decl. ¶ 11; Sepeta Decl. ¶ 4.) After several months without a resolution, defense counsel sent plaintiff a letter containing a "Notice of Breach of the APA, a Demand for Payment and a Demand for Inspection" on July 6, 2016, in which defendant notified plaintiff that it "need[ed] to see substantial progress toward resolution by July 15, 2016" but still "reserve[d] all rights and remedies." (O'Connor Decl., Ex. 3.) Later, on August 5, 2016, plaintiff's counsel asserts that he mentioned in a phone call with defense counsel that plaintiff "had serious claims it would pursue against [defendant] related to team sales if the matter was not resolved soon." (Mueller Decl. ¶ 15; *see also* O'Connor Decl. ¶ 4.)

The parties ultimately could not resolve the matter, and, on August 19, 2016, defendant filed an action in the District Court for the Southern District of California, asserting claims for breach of contract, specific performance, accounting, conversion, and declaratory relief. (*See* Def.'s Compl.) Defendant served plaintiff with the complaint on October 18, 2016 (O'Connor Decl., Ex. 10), and plaintiff filed an answer and counterclaim on November 7, 2016, raising claims of fraudulent inducement, breach of the APA's non-compete provision, breach of the APA's delivery provisions, account stated for failure to pay an invoice, and indemnification. (*Id.*, Ex. 12.) The case is currently pending before District Judge Cathy Ann Bencivengo and

Magistrate Judge Jill L. Burkhardt of the Southern District of California.

B. Procedural History

Plaintiff commenced this action on October 31, 2016—prior to filing its answer and counterclaim in the California case—in the Suffolk County Supreme Court, raising claims identical to those in its California counterclaim. (Sepeta Decl., Ex. 11.) Defendant removed the case to this Court, asserting diversity jurisdiction, on December 2, 2016. (ECF No. 1.) Defendant filed its motion to change venue on December 22, 2016 (ECF No. 10),[1] plaintiff filed its opposition on January 6, 2017 (ECF No. 17), and defendant filed a reply on January 13, 2017 (ECF No. 20). Oral argument took place on January 23, 2017. The Court has fully considered the submissions of the parties.

II. SECTION 1404(A) MOTIONS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In general, "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). In determining whether to transfer venue, courts consider (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99-CV-10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of Am.*, 984 F. Supp. 757, 764 (S.D.N.Y. 1997) (other citations omitted)). Ordinarily, "[a] motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), including: "'(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties,'" *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 832 (S.D.N.Y. 2012) (quoting *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)).

Nevertheless, "[w]here there are two competing lawsuits, the first suit should have priority." *Employers Ins. of Wausau*, 522 F.3d at 274–75 (quoting *Simmons*, 878 F.2d at 79) (alteration in original). The Second Circuit has "recognized only two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances' warrant giving priority to the second suit." *Id.* (citations omitted). The most notable "special circumstance" under the second exception is "where the first-filed lawsuit is an improper anticipatory declaratory judgment action." *Id.* For a first-filed suit to be considered "anticipatory," "it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and

---

[1] Defendant also filed a motion for a preliminary injunction on December 23, 2016 (ECF No. 23), but the briefing on that motion was stayed pending the outcome of this motion (ECF, Scheduling Order dated January 23, 2017).

3

subsequent legal action." *Id.* In *Federal Insurance Co. v. May Department Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992), for example, May Department Stores, an insurance policyholder, "wrote to Federal [Insurance Company] informing it that if it did not satisfy May's claim under the Policy by May 15, 1992, May planned to sue on the Policy." Federal brought suit for declaratory judgment on May 11, 1992, and the court held that the action qualified as a "special circumstance[]" warranting departure from the first-filed rule because it was filed "immediately after receiving notice of planned suit from the other party." *Id.*

By contrast, in *Employers Insurance of Wausau*, the Second Circuit held that a suit by insurers was not "anticipatory." 522 F.3d at 276–77. In that case, insurers brought an action against various media company policyholders, seeking a declaratory judgment that the insurers had no obligation under a series of policies to provide coverage in connection with a copyright-infringement lawsuit filed against the policyholders. *Id.* at 273–74. After informing the insurers of the pending copyright lawsuit, the policyholders issued "requests for information," "coverage requests," and "other inquiries." *Id.* at 276. They eventually retained "coverage counsel," and "the general tenor of the communications leading up to the [insurer's] action" indicated that "litigation was clearly on the horizon." *Id.* at 277. Nevertheless, "there was no notice letter or other communication conveying a specific threat of litigation" by the policyholders. *Id.* As such, the Second Circuit concluded that the insurers' declaratory judgment action "was not improperly anticipatory" because "it was not a response to a direct threat of litigation." *Id.* It, therefore, held that the district court erred in departing from the first-filed rule on this basis. *Id.* at 278.

III. DISCUSSION

As set forth below, defendant's lawsuit in California plainly predates plaintiff's instant action, and plaintiff has failed to establish either that "the balance of convenience" favors litigation in this district or that "special circumstances" exist warranting departure from the first-filed rule. *See id.* at 274–75. Because neither exception to the first-filed rule applies, defendant's motion to transfer venue is granted.

As a threshold matter, the Court concludes that plaintiff has not shown that the balance of convenience so favors New York as to overrule the first-filed rule. All the claims in the dispute arise from the parties' execution of the APA and fulfilment of their obligations thereunder. The APA closed in California, and 75% of the brick-and-mortar stores subject to it are located there. Furthermore, many of the salespeople involved with the business plaintiff purchased reside in California, as does the individual who allegedly fraudulently induced plaintiff to enter into the contract. Finally, plaintiff's claim for breach of the non-compete provision turns on the operation of several of the defendant's California businesses. Thus, the second, third, and fifth convenience factors—convenience of witnesses, relative ease of access to sources of proof, and the locus of operative facts, respectively—are, at the very least, neutral. Meanwhile, the remaining factors are plainly neutral, given that plaintiff's choice of forum is offset by defendant's (since defendant filed first), neither party has identified any unwilling witnesses, and there is no major disparity in the means of the parties. Indeed, plaintiff admitted at oral argument that, at best, the convenience factors are neutral between the two locations. Thus, this exception does not apply. *See id.* at 275 ("[A]n even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule." (quoting *Columbia Pictures*

*Indus., Inc. v. Schneider,* 435 F. Supp. 742, 751 (S.D.N.Y.1977))).

Moreover, plaintiff has not established that a "special circumstance[]" exists to justify departure from the first-filed rule. Plaintiff asserts that defendant's California action constitutes an "anticipatory action," and thus the first-filed rule does not apply. For the following reasons, the Court disagrees.

First, the chief marker of an "anticipatory action" for purposes of this exception is relief sought in the form of a declaratory judgment. *See, e.g., id.* at 275–77; *Federal Ins. Co.*, 808 F. Supp. at 350. Defendant's California lawsuit, however, seeks other forms of relief, including monetary damages. (*See* Def.'s Compl.) Thus, this is not a case where "federal declaratory judgment is . . . a prize to the winner of a race to the courthouses." *Employers Ins. of Wausau*, 522 F.3d at 275.

Second, plaintiff has not established that it made a "*direct threat* of litigation." *Id.* at 277 (emphasis added). Plaintiff here only made vague assertions that it "would have to go to court" (DeSimone Decl. ¶ 16), or "would pursue [its serious claims] against [defendant] . . . if the matter was not resolved soon" (Mueller Decl. ¶ 15; *see also* O'Connor Decl. ¶ 4.). These statements are a far cry from the direct, specific threat by the policyholder in *Federal Insurance Co.*, which set a specific date by which the insurer was to respond before the policyholder would file suit.

*See Federal Ins. Co.*, 808 F. Supp. at 350. Instead, like the communications in *Employers Insurance Co.*, the "general tenor" of plaintiff's communications here simply indicated that "litigation was clearly on the horizon," which is not sufficient to suspend the first-filed rule, absent a "notice letter or other communication conveying a *specific threat of litigation*." 522 F.3d at 277 (emphasis added). In fact, the communication that comes closest to a direct threat of litigation under this body of law was the July 6, 2016 letter *from defense counsel* to plaintiff's counsel demanding "substantial progress toward resolution by July 15, 2016." (O'Connor Decl., Ex. 3.) By contrast, plaintiff has not identified a *specific* communication that mentioned the possibility of a lawsuit prior to receiving the letter.[2] Indeed, the only specific communication that plaintiff has identified raising the possibility of litigation—the August 5, 2016 telephone conversation between counsel for both parties—occurred *after* defendant sent this letter. (*See* Mueller Decl. ¶ 15.) The fact that defendant engaged in settlement negotiations after sending the letter and before filing suit does not render that lawsuit anticipatory.

In sum, plaintiff has not established that the California action is an "anticipatory action" and, correspondingly, has failed to show a "special circumstance" sufficient to overcome the first-filed rule.

---

[2] Plaintiff's president vaguely asserts that, at some point around the time they stopped making payments, he "told [defendant] that something needed to be done about [defendant's alleged violations of the agreement] otherwise we would have to go to court [sic]." (DeSimone Decl., ¶ 16.) Plaintiff has not, however, specified precisely when this communication occurred or to whom it was made. Nor has it presented any evidence to corroborate this statement. In any event, as noted, the content of the communication is too indefinite to constitute a "direct threat of litigation" under *Employers Ins. of Wausau*, 522 F.3d at 275, and *Federal Ins. Co.*, 808 F. Supp. at 350. Moreover, plaintiff asserts that the communication took place around the time of the stoppage of the royalty payments, which occurred in the summer of 2015—approximately one year before defendant eventually filed suit. Thus, defendant did not rush to the courthouse with an anticipatory lawsuit in response to this vague assertion by plaintiff.

## IV. Conclusion

For these reasons, the Court finds that the first-filed rule warrants granting defendant's motion to transfer the proceedings. The Clerk of the Court is directed to transfer the case to the United States District Court for the Southern District of California under 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 3, 2017
 Central Islip, NY

\* \* \*

Plaintiff is represented by Evangelos Michailidis and Gerard S. Catalanello, Duane Morris LLP, 1540 Broadway, New York, NY 10036. Defendant is represented by David Harrison, Harrison, Harrison & Associates, Ltd., 110 Highway 35, 2nd Floor, Red Bank, NJ 07701, and Edward J. O'Connor, Solomon Ward Seidenwurm & Smith, LLP, 401 B Street, Suite 1200, San Diego, CA 92101.